**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

—————————

**No. 05-4437**

—————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

VINCENT CARNELIUS EURA,

Defendant - Appellant.

—————————

**No. 05-4533**

—————————

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

VINCENT CARNELIUS EURA,

Defendant - Appellee.

—————————

On Remand from the Supreme Court of the United States.
(S. Ct. No. 05-11659)

—————————

Submitted: February 12, 2008        Decided:  March 4, 2008

—————————

Before WILKINSON and MICHAEL, Circuit Judges, and HAMILTON, Senior
Circuit Judge.

---

Affirmed by unpublished per curiam opinion.

---

Craig Weston Sampson, Richmond, Virginia, for Appellant/Cross-Appellee. Paul J. McNulty, United States Attorney, Michael James Elston, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee/Cross-Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This case is before us on remand from the United States Supreme Court. The issue presented is whether the district court abused its discretion when it imposed an eighteen-month downward variance sentence on Eura's conviction for possession with intent to distribute five grams or more of cocaine base (crack), 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Finding no abuse of discretion, we affirm the district court's judgment.

I

On July 19, 2004, Eura was charged in a three-count second superseding indictment with conspiring to possess with intent to distribute fifty grams or more of crack, id. §§ 841(b)(1)(A) and 846 (Count One), possession with intent to distribute five grams or more of crack, id. §§ 841(a)(1) and (b)(1)(B) (Count Two), and possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c) (Count Three). Following a jury trial, Eura was convicted on Counts Two and Three, but acquitted on Count One. The jury found that Eura's conviction on Count Two involved between five and twenty grams of crack.

In preparation for sentencing, a Presentence Investigation Report was prepared by a probation officer, using the November 2004 version of the United States Sentencing Guidelines. See United States Sentencing Commission, Guidelines Manual, (USSG) (Nov.

- 3 -

2004).  The probation officer concluded that Eura's offense level on Count Two was 28, resulting in a Guidelines range of 78 to 97 months' imprisonment.[1]

At the sentencing hearing on April 15, 2005, the district court noted that the Guidelines range for Count Two under the Guidelines was 78 to 97 months.  The district court further noted that there was a sixty-month mandatory minimum sentence on Count Two and a mandatory sixty-month consecutive sentence on Count Three.

The district court then noted that Eura's sentence needed to "reflect the seriousness of the offense, to promote respect for law and to provide just punishment, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and provide the defendant with any corrective treatment."  (J.A. 328).  The district court also noted that it must consider pertinent policy statements by the Sentencing Commission.  The district court summarized the Sentencing

---

[1]The probation officer noted that the jury found that Eura's offense involved between five and twenty grams of crack, which produced a base offense level of 26.  Eura's offense level was raised two levels for obstruction of justice.  The probation officer also noted that Eura's criminal history category was I.  We note that the November 2007 version of the Guidelines would have provided a base offense level of 24, USSG § 2D1.1, and reduced Eura's Guidelines range to 63 to 78 months.  We also note that the amendment to USSG § 2D1.1 was recently made retroactive.  However, because the sentence imposed was reasonable even using the November 2004 version of the Guidelines, we need not address any issue related to the November 2007 version of the Guidelines.

- 4 -

Commission's 1995, 1997, and 2002 reports, all of which recommended that the 100:1 ratio be narrowed.[2] According to the district court, it was required to consider these reports in "assessing whether the punishment--whether the sentence promotes respect for law, provides just punishment, is necessary to provide a deterrence and to protect the public and is also reflective of the seriousness of the offense." (J.A. 334). The district court found that, in view of the Commission's reports, a sentence within the Guidelines range would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment in this case. The district court went on to state:

> Considering all the factors, the Court finds in the case of Mr. Eura--and I think it is appropriate to note that it is appropriate to consider this matter as an

---

[2]Prior to the recent amendment to USSG § 2D1.1, a defendant who dealt five grams of crack faced the same sentence as a defendant who dealt five hundred grams of powder cocaine. This disparity is commonly referred to as the "100:1 ratio." Congress adopted the 100:1 crack/powder cocaine ratio in 1986, thereby setting mandatory minimum sentences based on the quantity of cocaine, in crack or powder form. Congress adopted the 100:1 ratio in the Anti-Drug Abuse Act of 1986, Pub. L. No. 99-570, 100 Stat. 3207, when it created minimum and maximum terms of imprisonment for defendants convicted of trafficking in powder cocaine and crack. For example, 21 U.S.C. § 841(b)(1)(A) sets a mandatory minimum ten year sentence for those who possess or distribute more than five kilograms of powder cocaine and for those who possess or distribute more than fifty grams of crack. Moreover, § 841(b)(1)(B) sets a mandatory minimum five year sentence for those who possess or distribute more than five hundred grams of powder cocaine and for those who possess or distribute more than five grams of crack. In 1995, 1997, and in 2002, Congress declined to entertain the Sentencing Commission's entreaties to narrow the ratio, but, with the November 2007 amendment to USSG § 2D1.1, the ratio has been narrowed.

individual matter, not as a wholesale objection or acceptance of the guidelines.

In this instance, this is the kind of case that having considered the Sentencing Commission's policies recommendations, it is the kind of case that the guideline does not provide--the crack guideline does not provide an appropriate, fair and just punishment, and so the Court will not impose a sentence within the guidelines in this case.

(J.A. 335-36). Following these remarks, the district court declined to sentence Eura on Count Two within the advisory Guidelines range of 78 to 97 months. Rather, the district court sentenced Eura to sixty months on Count Two, which was the lowest possible sentence on Count Two, given the mandatory minimum sentence required for that count. The district court also imposed the mandatory consecutive sixty-month sentence on Count Three. In imposing sentence, the district court indicated that it acted "[p]ursuant to 18 U.S.C. Section 3553(a)," that it had "considered the guidelines as advisory," and that the chosen sentence "satisfie[d] the prerequisites of Section 3553(a)." (J.A. 337).

II

A

In Gall v. United States, 128 S. Ct. 586 (2007), and Kimbrough v. United States, 128 S. Ct. 558 (2007), the Supreme Court outlined the process to be used by a sentencing court in imposing a sentence and also outlined how an appellate court should review a sentence imposed by the sentencing court. In Gall, the Supreme Court

instructed that the sentencing court should first calculate the applicable Guidelines range. 128 S. Ct. at 596. This starting point furthers Congress' desire for efficient administration and nationwide consistency in sentencing. Id. After calculating the Guidelines range, the sentencing court must give both the government and the defendant "an opportunity to argue for whatever sentence they deem appropriate." Id. The sentencing court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by either party. Id. at 596-97. In so doing, the sentencing court may not presume that the Guidelines range is reasonable. Id. at 597. In the event the sentencing court decides to impose a variance sentence, i.e., one outside the recommended Guidelines range, the sentencing court "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." Id. As noted by the Gall Court, it is an "uncontroversial" proposition that a "major departure should be supported by a more significant justification than a minor one." Id.

The Court in Kimbrough also recognized that a sentencing court may rely heavily on a single factor at sentencing. 128 S. Ct. at 575-76. In that case, the factor at issue was the Sentencing Commission's position that the crack cocaine/powder cocaine sentencing disparity was flawed. Id. The Court made it clear that

the Guidelines range was just one of the factors warranting consideration by the sentencing court, and that the sentencing court may vary from the Guidelines range based solely on policy considerations, including a disagreement with the Guidelines. Id. at 570.

Our appellate review of the reasonableness of a sentence focuses on whether the sentencing court abused its discretion in imposing the chosen sentence. Gall, 128 S. Ct. at 597. This abuse of discretion standard of review involves two steps, the first examines the sentence for significant procedural errors, the second looks at the substance of the sentence. The Court in Gall explained that "significant" procedural errors include errors such as "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range." Id.

Substantive reasonableness review entails taking into account the "totality of the circumstances, including the extent of any variance from the Guidelines range." Id. If the sentence is within the Guidelines range, we, as an appellate court, may, but are not required to, presume that the sentence is reasonable. Id. However, if the sentence is outside the Guidelines range, we are

prohibited from applying a presumption of unreasonableness. Id.

In reviewing the substantive reasonableness of the sentence, we may consider "the extent of the deviation," but we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Id. Even if we would have reached a different sentencing result on our own, this fact alone is "insufficient to justify reversal of the district court." Id.

B

Turning to our review of Eura's sentence, we initially note that there are no procedural errors. The district court correctly calculated the Guidelines range to be 78 to 97 months' imprisonment. After calculating the Guidelines range, the district court carefully considered the § 3553(a) factors to determine whether they supported a variance sentence. In so doing, the district court did not presume that the Guidelines range was reasonable. Moreover, the district court thoroughly explained its reasoning supporting the variance sentence. In short, there being no procedural errors, we must determine whether the district court abused its discretion in determining that the § 3553(a) factors supported a sixty-month sentence on Count Two and justified an eighteen-month deviation from the Guidelines range.

The district court's rationale for varying downward eighteen months from the low-end of Eura's Guidelines range is reasonable

and premised on the factors set forth in § 3553(a).  The district court looked to the § 3553(a) factors and was clearly at liberty to heavily rely on the Sentencing Commission's position that the crack/powder cocaine sentencing disparity was flawed.  <u>Kimbrough</u>, 128 S. Ct. at 575-76.  In view of the district court's careful consideration of the § 3553(a) factors, we conclude that the eighteen-month downward variance was supported by the justifications necessary to uphold the sentence.

## III

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>